**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AKEEM HOPKINS, individually and as a representative of the class,** | ) | |
| **Plaintiff,** | ) | **Case No. 16 C 7907** |
| **v.** | ) | |
| **STAFFING NETWORK HOLDINGS, L.L.C., d/b/a STAFFING NETWORK, LLC and QUALITY PLACEMENT AUTHORITY, LLC,** | ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** [1] |
| **Defendants.** | ) | |

## INTRODUCTION

In their motion to dismiss, Defendants attempts to escape liability for their willful violations of the Fair Credit Reporting Act ("FCRA") by arguing, contrary to well-established Seventh Circuit and Supreme Court law, that Plaintiff lacks standing to bring this action and, therefore, requests the outright dismissal of the lawsuit. As discussed herein, both arguments must be rejected.

There is no debate that consumer reports contain a vast amount of personal and private information. Recognizing the dangers that these impersonal commercial reports can pose, Congress greatly limited the circumstances in which an employer may obtain a background

[1] Despite additional arguments set forth in Defendants' "Motion to Dismiss and Motion for Determination That Class Action is Not Maintainable", by Order of Court, the issue of whether Plaintiff has standing to invoke this Court's jurisdictional authority is the only matter being addressed at this time. (*See* D.E. 12 – August 16, 2016 Order); (Ex. 1 – Hearing Tr. at 4:16-19; 5:4-6, 18-21 ("And if I were to find that you do have standing, then that would just have delayed the decision on the other issues, but it would seem to me that that might make sense . . .." "Get me your response by September 12th and on the jurisdiction issue only." "[D]rop a footnote or something just to remind me that we're not briefing the other issues.")

report. Congress made it illegal for employers to obtain background reports without first making a clear and conspicuous disclosure that a report would be procured. 15 U.S.C. § 1681b(b)(2). Congress further required this disclosure to be made in a document consisting "solely" of the disclosure. *Id.* In addition, Congress required consumers to give consent, in writing, for the employer to procure a report. Together, these two provisions mandate informed consent. *Id.* Defendants contend that this Court lacks jurisdiction to decide Plaintiff's claims entirely. Defendants, however, misread the decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and fail to recognize that Plaintiff's claims, which originated in state court, should not be outright dismissed.

First, *Spokeo* supports this Court's retention of subject-matter jurisdiction. *Spokeo* explicitly affirmed that "intangible" injuries are sufficient to confer standing. *Id.* at 1549. As examples of intangible injuries, the Court mentioned both invasion of privacy and the deprivation of information to which a plaintiff has a Congressionally established right. *Id.* Those are the precise harms alleged by Plaintiff here. Plaintiff's privacy was invaded because Defendants obtained consumer reports when they had no legal right to do so. Furthermore, Plaintiff experienced informational injury because he was deprived of information in which he had a Congressional entitlement.

Finally, Defendants' request for the outright dismissal of Plaintiff's complaint lacks any basis in law and is contrary to an on-point federal statute. Plaintiff originally filed this case in Illinois state court. Defendants removed Plaintiff's case and thereby invoked this federal jurisdiction. (*See* D.E. 1.) While Plaintiff maintains this Court does indeed have subject-matter jurisdiction, a contrary ruling by this Court means Plaintiff's case must be *remanded to state court*, not dismissed as Defendants seek. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be

remanded.”).

## BACKGROUND

Under the FCRA, a person may not procure a consumer report for employment purposes unless “a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.” 15 U.S.C. § 1681b(b)(2)(A)(i).

On July 1, 2016, Plaintiff filed his case in Illinois state court, alleging that Defendants failed to comply with § 1681b(b)(2) by providing him with a disclosure that contained extraneous information. On August 5, 2016, Defendants removed the case to this Court. (D.E. 1.) Plaintiff has sufficiently alleged that by failing to comply with the FCRA’s disclosure requirements, Defendants invaded his privacy and denied him of information to which he was entitled under the FCRA. Defendants argue that Plaintiff has failed to allege an injury in fact and, therefore, does not have standing to bring this matter.

## ARGUMENT

### I. *SPOKEO* DID NOT CHANGE THE REQUIREMENTS FOR ARTICLE III STANDING

Article III standing has three elements, as reiterated in *Spokeo*: “The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.” *Spokeo*, 136 S. Ct. at 1547. The point of contention in *Spokeo* was the first of these three elements – injury in fact. The Court stated that “to establish injury in fact, a plaintiff must show that he or she suffered ‘an invasion of a legally protected interest’ that is ‘concrete and particularized’ and ‘actual and imminent, not conjectural or hypothetical.’” *Id.* at 1548 (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id.* The Court found the particularity part of the injury in fact element was easily satisfied in the case before it. This left open the question whether the Ninth Circuit had properly considered the concreteness requirement.

Defendants do not appear to challenge that Plaintiff's injuries are particularized. Rather, Defendants argue that, under the Supreme Court's decision in *Spokeo*, Plaintiff has not suffered a concrete injury resulting from Defendants' undisputed FCRA violations. Despite Defendants' mischaracterization of the decision, *Spokeo* did not change the legal framework for analyzing standing nor overrule any of the relevant precedent. Instead, the Court in *Spokeo* simply reiterated that the Article III standing inquiry asks not only whether an injury is particularized, but also whether it is concrete.

Elaborating on the meaning of concreteness, the Court in *Spokeo* distilled several "general principles" from its prior cases. *Spokeo*, 136 S. Ct. at 1550. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as well as injuries based on a "risk of harm." *Id.* at 1549. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* So if "the common law permitted suit" in analogous circumstances, the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id.* at 1549; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

The Court also noted, however, that a plaintiff need not dig up a common-law analog to establish a concrete injury. Instead, the Court reaffirmed the power of Congress to define the metes and bounds of what counts as an injury, noting that Congress is "well positioned to

identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549. Accordingly, the third principle emphasized in *Spokeo* is that the violation of procedural rights can constitute a concrete injury if the procedures protect against a Congressionally identified harm. As stated by the Court, "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case *need not allege any additional harm* beyond the one Congress has identified." *Id.* (emphasis added). Thus, the Court offered no assessment of the Ninth Circuit's analysis, aside from its determination that the Ninth Circuit had failed to analyze concreteness as a separate step in the injury-in-fact inquiry.

As many courts and commentators have now recognized, *Spokeo* did not change the legal framework for analyzing standing. Nor did it overrule any of the relevant circuit-level precedent. "Because *Spokeo* largely reiterated long-standing principles of Article III standing, and did not clearly disrupt appellate precedent holding that plaintiffs . . . have standing to bring this type of [c]laim . . . the Court agrees that [Plaintiff] has standing to assert this claim." *Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120, 2016 WL 3247872, *1, n. 1 (N.D. Ind. June 13, 2016); *Thomas v. FTS USA, LLC*, No. 3:13-CV-825, 2016 WL 3653878, at *4 (stating "*Spokeo* did not change the basic requirements of standing"); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *3 (N.D.W. Va. June 30, 2016) ("*Spokeo* thus created no new law; it merely remanded the case to allow the Ninth Circuit to conduct the proper analysis.").

Defendants nonetheless claim that "[t]he ruling in *Spokeo* is a departure from prior FCRA cases that found a violation of a statutory right was sufficient allegation of an injury-in-fact to confer standing." (Def.'s Mem. at 4.) The Court did nothing of the sort. That a "bare

procedural violation, divorced from any concrete harm" is not enough to confer standing has long been the rule for Article III standing. *Spokeo*, 136 S. Ct. at 1549; *see Summers v. Earth Island Institute,* 555 U.S. 488, 496 (2009). And, although it is true that, after *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation," that was just as true *before Spokeo*. *See, e.g., Summers*, 555 U.S. at 497 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Thus, despite Defendants' efforts to exaggerate the decision's importance, *Spokeo* has done very little to change (or even clarify) the law; it simply summarizes the doctrine and provides guidance for the proper inquiry.

## II. SEVENTH CIRCUIT LAW

As this Court in *Rodriguez* noted, "[a]lthough the Constitution limits Congress's power to confer standing, the Supreme Court has recognized that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Rodriguez v. Sprint/United Mgmt. Co.*, No. 15 C 10641, 2016 WL 640527, at *2 (N.D. Ill. Feb. 19, 2016) (quoting *Lujan*, 504 U.S. at 578). Congress may do this by creating statutory rights. *Id*. "The Seventh Circuit and other circuit courts throughout the country have repeatedly recognized that Congress may create statutory rights the violation of which gives rise to an injury sufficient to support Article III standing." *Id.*; *see e.g., Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 663-64 (7th Cir. 2015); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009). As the *Rodriguez* court reaffirmed, "[t]he Supreme Court held exactly that, over forty years ago:

> 'The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . .. Essentially, the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'"

*Rodriguez*, 2016 WL 640527, at *2-3 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citations and internal quotation marks omitted)).

Despite Defendants' argument, the *Spokeo* ruling is not a "departure from prior FCRA cases that found a violation of a statutory right was a sufficient allegation of an injury-in-fact to confer standing." (Def.'s Mem. at 4.) In *Rodriguez,* a FCRA case very similar to our case, the Court found "it is readily apparent that [Plaintiff] has alleged an injury in fact sufficient to confer standing to sue under Article III." *Rodriguez*, 2016 WL 640527, at *3. The court explained, "[t]he FCRA exists to protect the privacy and economic interests of consumers." *Id.*; *see* 15 U.S.C. §§ 1681(a)(2)-(4). "One way that Congress attempted to achieve this purpose was through the disclosure provision in section 1681b(b)(2)(A), which provides that a consumer's private information may be disclosed only after the consumer has signed a clear and decipherable authorization." *Id*. The court further noted, "Congress enacted the FCRA to protect consumer control over personal information the exposure of which, though often necessary in the modern economy, can result in significant invasion of privacy and can jeopardize a consumer's personal, reputational, and financial well-being." *Id*. at *4. Thus, "[w]hen Congress created individual, enforceable statutory rights in the FCRA, it 'elevat[ed] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*. (quoting *Lujan*, 504 U.S. at 578).

Similar to the *Rodriguez* court, the *Santangelo* court concluded that a plaintiff can sufficiently allege an injury in fact without alleging actual damages for purposes of a FCRA violation. *Santiago v. Comcast Corporation*, 2016 WL 464223, at *3 (N.D. Ill. 2016). The court reasoned, "[b]ecause the FCRA grants consumers a legally protected interest in limiting access to their credit reports and provides redress for violations, the Court concludes that Santangelo's

allegations about [defendant's] interference with that legally protected interest are sufficient to establish Article III standing." *Id.*

Decisions since *Spokeo* that have considered the issue of standing when deciding the issue of an injury in fact have been consistent with the *Rodriguez* and *Santangelo* analyses. For example, in *Lane v. Bayview Loan Service, LLC*, the plaintiff's allegation that the defendant failed to disclose information required under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g, was sufficiently concrete under *Spokeo* to confer standing. 2016 WL 3671467, at *4 (N.D. Ill. 2016). The court reasoned, "[w]hen a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit." *Id.*; *see also Mogg v. Jacobs*, No. 15-cv-1142-JPG-DGW, 2016 WL 4395899, at *4 (S.D. Ill. March 15, 2016) (plaintiff presented evidence of concrete injury resulting from alleged violations of the FDCPA); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *5 (N.D. Ill. Aug. 11, 2016) (defendant's alleged failure to provide plaintiff with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing); *Bernal v. NRA Group, LLC,* No. 16 C 1904, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016) (finding standing in FDCPA case and stating "[t]he harm that [plaintiff] suffered may be intangible, given that it is not alleged that [plaintiff] actually paid the disputed percentage-based collection costs, but 'intangible injuries can nevertheless be concrete,' and 'because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is . . . instructive and important.') (quoting *Spokeo*, 136 S. Ct. at 1549); *Chapman*, 2016 WL 3247872, at *1, n. 1 (N.D. Ind. 2016) ("Because *Spokeo* largely reiterated long-standing principles of Article III standing, and did not clearly disrupt appellate precedent holding that plaintiffs in Ms. Chapman's position have standing to bring this type of claim [alleged violation of the FDCPA

for failing to advise her of her rights as required by statute] under the FDCPA . . . the Court agrees that Ms. Chapman has standing to assert this claim.”).

Other Courts of Appeal that have directly considered the issue also recognize that a plaintiff suing for statutory damages under the FCRA or similar consumer protection statutes has Article III standing. *See Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) (finding standing in FCRA case and stating that “[i]t is of no consequence that appellants' injury is dependent on the existence of a statute”); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009) (“A plaintiff need not demonstrate that he or she suffered actual monetary damages, because the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasions of which creates standing.”) (internal quotation marks omitted); *Beaudry*, 579 F.3d at 705-07 (finding standing and ruling that the FCRA “permits a recovery when there are no identifiable or measurable actual damages”); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (“The deprivation of such a statutory right may constitute an injury-in-fact sufficient to establish standing, even though the plaintiff ‘would have suffered no judicially cognizable injury in the absence of [the] statute.'”) (quoting *Warth*, 422 U.S. at 514); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006) (“Congress may expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights.”).

In sum, the fact that Plaintiff did not receive the disclosure to which he was entitled is an informational injury – an injury in fact that is concrete, particularized, and actual or imminent; traceable to the challenged action; and redressable. Precedent from the Supreme Court and the Seventh Circuit, persuasive opinions from other federal courts of appeal, and decisions by this Court which have considered the issue, all dictate that Plaintiff has standing. Thus, Defendants' motion to dismiss must be denied.

## III. DEFENDANTS VIOLATED PLAINTIFF'S SUBSTANTIVE FCRA RIGHTS

Defendants' motion is premised on the theory that Plaintiff has only alleged a "purely technical statutory violation." (Def.'s Mem. at 4.) But merely labeling something as a "purely technical statutory violation" does not make it so. By its own terms, the rights conferred by the FCRA are substantive—the FCRA gave Plaintiff a right to receive a particular kind of information, presented in a particular kind of way, at a particular point in time. *See Panzer v. Swiftships, LLC*, No. CIV.A. 15-2257, 2015 WL 6442565, at *5 (E.D. La. Oct. 23, 2015) ("Under the FCRA, Plaintiff and other consumers have the right to specific information at specific times.")

By failing to comply with the FCRA's stand-alone disclosure requirement, Defendants deprived Plaintiff of his *substantive rights* under the FCRA. The conclusion that the rights conferred by § 1681b(b)(2) are substantive in nature was recently affirmed by the *FTS* court. In a thorough and lengthy opinion which evaluated both *Spokeo* and the text and legislative history of the provisions of the FCRA at issue here, the court in *FTS* concluded that with respect to the FCRA's disclosure provision:

> § 1681b(b)(2) establishes two rights. First, it establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in "a document that consists solely of the disclosure" helps to implement the textual command that the disclosure be clear and conspicuous. Second, § 1681b(b)(2) establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances. *Those protections are clearly substantive, and neither technical nor procedural*.

*FTS*, 2016 WL 3653878, at *7 (emphasis added). The court went on to conclude that the plaintiff had alleged two concrete injuries stemming from the failure to provide a stand-alone disclosure under 15 U.S.C. § 1681b(b)(2)—deprivation of information and invasion of privacy. *Id.* at *8-11. These injuries were sufficient to confer standing under Article III, and the court

therefore denied defendant's motion.

Other courts have also denied standing challenges where a plaintiff has alleged violations of the substantive sections of the FCRA. *See Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16CV153-HEH, 2016 WL 4249496 (E.D. Va. Aug. 9, 2016) (finding that FCRA provides substantive rights to privacy that was invaded when report was pulled without a permissible purpose); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *6 (N.D. Cal. July 26, 2016) (finding standing where defendant had violated plaintiff's substantive FCRA rights, thereby intruding upon plaintiff's privacy interest); *Larson v. Trans-Union, LLC*, No. 12-cv-5726, 2016 WL 4367253 (N.D. Cal. Aug. 11, 2016) (finding FCRA injury in fact based on informational injury).

Thus, Defendants' failure to provide a compliant disclosure injured Plaintiff's concrete rights to privacy and information, and therefore Defendants' motion should be denied.

### A. Invasion of Privacy

Congress enacted the FCRA in 1970 to protect the "consumer's right to privacy" by ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer information. 15 U.S.C. § 1681(b). Employment background checks contain a wealth of information traditionally recognized as private – dates of birth, social security numbers, detailed address history, credit histories, and information from a variety of jurisdictions and sources about criminal background and driving history.[2] Background reports are sold in an impersonal marketplace by gigantic corporations who have no relationship with the people whose data they are selling. As the Ninth Circuit described it, consumer reporting agencies "traffic[] in the

[2] *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 764 (1989) (holding that privacy interest forbade release of "rap sheet" because even though much of the information contained therein was publicly available, it was available only in bits and pieces from a variety of disparate sources, and the party had a privacy interest in preventing the dissemination of the compiled information).

reputations of ordinary people." *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008). A prime motivation for the FCRA was the impact of third-party data collection on the employment market and particularly on individual job seekers. When it passed the stand-alone disclosure requirement, Congress voiced a strong "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995). The FCRA thus "sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers." *Kelchner v. Sycamore Manor Health Ctr*., 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004), *aff'd*, 135 F. App'x 499 (3rd Cir. 2005).

The FCRA's employment-specific provisions go beyond the general privacy protections of the Act – requiring employers to demonstrate a permissible purpose, provide a stand-alone disclosure form, and gain written authorization from the consumer. These provisions demonstrate that Congress intended to allow consumers to make an informed choice over whether employers could view their reports. As one legislator explained, the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants"; the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections"). In addition to the risk of privacy-related harm, Congress also "found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment" – often without consumers' knowledge. *Id.*; *see* S. Rep. No. 91-157, at 3-4 (1969).

The disclosure requirement at issue here is contained in § 1681b, titled "Permissible

Purposes of Consumer Reports". Section 1681b(b)(2) requires employers to disclose to job seekers that "a consumer report may be obtained for employment purposes." After providing such a disclosure, employers must also obtain written authorization form the consumer before procuring his or her consumer report. The FCRA is an informed consent statute. To ensure that prospective employees are adequately informed about their rights concerning these consumer reports, the FCRA requires that the disclosure be "clear and conspicuous" and provided "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A). Absent the job seeker's informed consent, it is illegal for a company to obtain a job applicant's consumer report for employment purposes – a point Congress hammered home by criminalizing the acquisition of a consumer report under false pretenses. 15 U.S.C. § 1681q.

Framed in the language of the common law, an employer that buys a background report without a legal basis to do so has invaded the individual's privacy. "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the disclosure and authorization requirements set forth in § 1681b(b)(2). 15 U.S.C. § 1681b(b)(2)(A). "The FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp.3d 868, 869 (N.D. Cal. 2015).

Invasion of privacy is a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and thus is a legally cognizable injury for standing purposes. *Spokeo*, 136 S. Ct. at 1549. For more than a century, American courts have recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." Restatement (Second) of Torts § 652A (1977); *see id*. cmt. a (noting that "the existence of a right of privacy is now recognized in the great majority

of the American jurisdictions"). In his seminal 1890 article on the right to privacy, Justice Brandeis explained even then that "what is ordinarily termed the common-law right to intellectual and artistic property are . . . but instances and applications of a general right to privacy." Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 (1890). American courts at the turn of the century identified the right of privacy as "derived from natural law." *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905). Harms to an individual's privacy have traditionally been regarded as a cognizable basis for suit.

Even if Plaintiff's claims were not precisely cognizable at common law, the Supreme Court explained in *Spokeo* that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578); *Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950, at *3 (D. Minn. July 15, 2016) ("*Spokeo* does not require that the harm created by the violation of a statute be identical to the type of harm that will give rise to a recovery under the common law of any particular jurisdiction.") Here, Congress recognized that employers' procurement of consumer reports without adequate disclosure and authorization harmed individuals' privacy interests. Congress's enactment of the FCRA is nothing more than its adjustment of the boundaries of the common-law right to privacy to account for changing marketplaces and technologies, such as the advent of giant databases and corporations whose sole function is to sell reports about job applicants to prospective employers. Just as Plaintiff would have had certain privacy rights at common law, through the enactment of the FCRA, Congress codified those rights in the specific context of consumer reporting agencies selling reports for employment purposes. Plaintiff has pled that Defendants unlawfully obtained a report on him in a manner that disregarded the bounds of personal privacy established by Congress.

Furthermore, Plaintiff does not need to have suffered any consequential harm or actual

damages beyond the unlawful procurement of his background check: "[W]here a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of actual damages." *FTS*, 2016 WL 3653878, at *10.

The Third Circuit stated in its first post-*Spokeo* opinion that "when it comes to laws that protect privacy, a focus on economic loss is misplaced." *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, __F.3d__, 2016 WL 3513782, at *6 (3d Cir. June 27, 2016). The court further elaborated:

> While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," *Google* noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. Accordingly, we conclude that the plaintiffs have alleged facts which, if true, are sufficient to establish Article III standing.

*Id* at *7. Other courts have followed suit finding that a privacy violation can constitute a concrete injury in fact. *See Burke*, 2016 WL 4249496, at *4 ("Therefore, by claiming that the Defendant obtained her consumer report without a lawful purpose under the FCRA, Burke has pleaded a concrete harm."); *Boelter v. Hearst Commc'ns, Inc.*, --- F.Supp.3d ---, No. 15 Civ. 3934 (AT), 2016 WL 3369541, at *3 (S.D.N.Y June 17, 216) (holding that the plaintiffs suffered a concrete injury in fact when defendant sold plaintiffs' information to third parties in violation of the Video Privacy Protection Act); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751, 2016 WL 3543699, at *8 (S.D. Cal. June 29, 2016) (invasion of privacy provided the concrete injury under California wiretap law); *Hawkins*, 2016 WL 3999458, at *6 (finding standing where defendant had violated plaintiff's substantive FCRA rights, thereby intruding upon plaintiff's privacy interest). As stated by the Seventh Circuit, "[t]hat actual loss is small

and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

Thus, because Plaintiff has suffered a concrete privacy invasion, Defendants' motion should be denied.

**B. Informational Injury**

In *Spokeo*, the Court also explicitly embraced informational injuries as the kinds of injuries which are sufficient to confer standing without alleging any additional harm. As authority for the statement that in certain kinds of cases the "plaintiff need not allege any additional harm beyond the one which Congress has identified," the Court cited two cases which held that statutory violations, without more, constituted injury in fact: *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) and *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989). *Spokeo*, 136 S. Ct. at 1549. Each of these cases involved the deprivation of information to which the individual has a statutory right conferred by Congress.

In *Public Citizen*, non-profit groups sued for access to records pertaining to the American Bar Association's ("ABA") records relating to its participation in the federal judicial nomination process. The ABA argued that the plaintiffs had not "alleged injury sufficiently concrete and specific to confer standing." 491 U.S. at 448. The Supreme Court soundly rejected that argument, holding that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent [the law] allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Importantly, the Court did not require the plaintiffs to demonstrate some additional injury beyond not being able to access the information to which they had a right. *Akins* built on *Public Citizen*, holding "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Akins*, 524 U.S. at 11, 21.

Also instructive is *Havens Realty Corp. v. Coleman*, which involved "testers" applying for housing they had no intention of ever living in for the purpose of determining whether the defendant-realtor would provide legally required disclosures. 455 U.S. 363 (1982). The Court described the tester as having no "intention of buying or renting a home" and said that he "fully expect[ed] that he would receive false information." *Id.* at 373-374. In other words, the tester suffered no tangible injury. Nonetheless, the Court held that "[a] tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.* In other words, "the fact of the misrepresentation – not the recipient's deception by it or reliance on it – constituted the concrete injury." *Prindle v. Carrington Mortgage Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *9 (M.D. Fla. Aug. 16, 2016).

In *Akins*, *Public Citizen*, and *Havens*, plaintiffs had standing despite the fact that they (1) had suffered no monetary damages or other consequential harm, and (2) would not have had any entitlement to the information at issue absent Congress creating that entitlement by statute. The same notion applies here. *Havens*, 455 U.S. at 373; *see also Spokeo*, 136 S. Ct. at 1549 (noting that "a plaintiff in [certain] case[s] need not allege any additional harm beyond the one Congress has identified" in the statute).

Under the well-established constitutional principal of informational injury, there is standing in this case. "[W]here a consumer alleges, as Thomas has here, that he or she has received a disclosure that does not satisfy [the FCRA's] requirements, the consumer has alleged a concrete informational injury." *FTS*, 2016 WL 3653878, at *10; *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (finding standing where "Church did not receive information to which she alleges she was entitled"); *Dickens v. GC Servs. Ltd. P'ship*, No. 8:16-CV-803-T-30TGW, 2016 WL 3917530, at *2 (M.D. Fla. July 20,

2016) ("When the plaintiff alleged that the defendant failed to provide information she was entitled to receive, the Court concluded, she alleged a congressionally elevated cognizable injury."); *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp.3d 810, 817-18 (E.D. Va. 2015) (holding plaintiffs had Article III standing in a case alleging a violation of § 1681b(b)(2), because defendant failed to provide plaintiff with the "kind of disclosure" that the FCRA "guarantees" before "procur[ing] a consumer report containing his information"); *Panzer*, 2015 WL 6442565, at *5.

## IV. DISMISSAL IS INAPPROPRIATE UNDER ANY CIRCUMSTANCES

By removing Plaintiff's suit, Defendants invoked federal court jurisdiction, and in the unlikely event that Defendants' motion is granted, Plaintiff's lawsuit cannot be dismissed, but rather, must be *remanded* back to Illinois state court, where Plaintiff originally filed. *See* 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded."); *Smith v. Wisconsin Dep't of Agric., Trade and Consumer Protection*, 23 F.3d 1134, 1142 (7th Cir. 1994) (remand is mandatory under section 1447(c)). Defendants do not mention 28 U.S.C. § 1447(c) in their brief and provide no legal theory or argument that would allow this Court to dismiss, rather than remand, Plaintiff's case. Notably, the jurisdiction of the state courts, including Illinois, is not restricted by Article III of the Federal Constitution. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.").

Additionally, the FCRA provides for concurrent jurisdiction in state court, "An action to enforce any liability created under this subchapter may be brought in any appropriate United

States district court . . . or in any other court of competent jurisdiction." 15 U.S.C. § 1681p. Therefore, the FCRA does not create exclusive federal jurisdiction but instead permits a state forum as well. *Sehl v. Safari Motor Coaches, Inc.*, 2001 WL 940846, at *7 (N.D. Cal. 2001) (discussing difference between FCRA and federal statutes which confer exclusive federal jurisdiction.) As such, Congress has expressly provided for FCRA cases to be litigated in state court as well as federal court.

## CONCLUSION

Plaintiff has Article III standing to pursue his claims. For the foregoing reasons, Defendants' motion to dismiss for lack of standing should be denied.

Dated: September 12, 2016

*/s/ Andrew C. Ficzko*

STEPHAN ZOURAS, LLP
Andrew C. Ficzko
205 North Michigan Ave
Suite 2560
Chicago, IL 60601
Telephone: 312-233-1550

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, a true and correct copy of the foregoing Response in Opposition to Defendants' Motion to Dismiss was filed via this Court's CM/ECF system.

*s/ Andrew C. Ficzko*